## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DEXTER JEROME LEE,

       Petitioner,

v.                                          Case No. 8:04-cv-1877-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.

       Respondents.

_____/

## **O R D E R**

Petitioner, an inmate of the Florida Penal System, initiated this action by filing a

petition for Writ of Habeas Corpus (Dkt. 1) pursuant to 28 U.S.C. § 2254. Respondents have

filed a response (Dkt. 15) to the petition, Petitioner has filed a reply (Dkt. 21) to the response,

and the matter is before the Court for a decision on the merits. For reasons set forth below,

the Court finds that Petitioner has failed to show that he is entitled to federal habeas relief.

### **Background**

Based on events occurring in a bank on December 23, 1997, Petitioner was charged

with robbery. (Dkt. 16, Ex. 39 Vol. I at R. 15). After a jury trial, he was found guilty of grand

theft. (Id. at T. 1 to Vol. IV at 600). The state appellate court affirmed. (Id., Ex. 4). Petitioner moved for postconviction relief, and the state postconviction court granted an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel. (Id., Ex. 10, 12). After the hearing, the court denied the motion, and the state appellate court affirmed. (Id., Ex. 14, 16, 21). Petitioner then filed the instant petition for federal habeas relief. (Dkt. 1).

**Standard of Review**

Where a state court has considered the issues raised in a habeas petition and has entered a decision on the merits, § 2254(d) governs federal review of those claims. See Penry v. Johnson, 532 U.S. 782, 792 (2001). Section 2254(d) requires "highly deferential" review of the state court's judgment, Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005), "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Under § 2254(d), this Court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Clearly established Federal law" is the governing legal principle, and not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) where the state court applies a rule that contradicts Supreme Court case law, or the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from that of the Supreme Court decision. Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003). A state court does not have to cite Supreme Court precedent or even be aware of it, as long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002).

A state court decision involves an "unreasonable application of" Supreme Court precedent where the state court identifies the correct governing rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case, or the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). To involve an "unreasonable application," the state court decision must be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer, 538 U.S. at 75. The reasonableness of a state court's application of Supreme Court case law must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652 (2004).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, this presumption of correctness does not apply to mixed determinations of law and fact. Parker

v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

**Discussion**

Petitioner contends that he was deprived of his Fifth Amendment right to effective assistance of counsel due to his counsel's failure to develop certain potentially exculpatory evidence. Petitioner's argument focuses on a bank surveillance video of the crime. Essentially, Petitioner argues that if certain still images from the video had been enhanced to show greater detail, he would have been shown to have been misidentified as the perpetrator, and that his trial counsel's failure to seek a continuance to develop such enhanced images amounted to ineffective assistance.

To prevail on the ground of ineffective assistance of counsel, Petitioner must show that (1) counsel's performance was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient performance prejudiced Petitioner's defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

The state postconviction court held an evidentiary hearing on the issue of ineffective assistance. (Dkt. 16, Ex. 14.) At the hearing, Petitioner's trial counsel testified that he received the bank surveillance video on the Thursday or Friday before the Monday on which the trial began. (Id. at R. 220.) Sometime between then and the trial, he viewed the video. (Id. at R. 220, 225.) However, the video "jumped around" and did not conclusively establish whether the perpetrator was Petitioner. (Id.) Petitioner's counsel asked Petitioner if he

wanted to view the video, which counsel knew could mean he would have to move to continue the trial. (Id. at R. 221, 238.) However, Petitioner declined and said that he wanted to go forward with the trial. (Id. at R. 221-22, 238.) Petitioner expressed no concern about the video not being played during the trial. (Id.) Also, Petitioner's counsel was concerned that the results of enhancing images from the video could weaken Petitioner's case and, under rules of professional ethics, could also limit counsel's options in his direct examination of Petitioner at trial. (Id. at R. 222, 238, 225-26.) Counsel made a calculated decision to proceed to trial without enhancing the images. (Id. at R. 221-26, 238-39.) The latitude afforded defense counsel in such strategic decisions is very broad, Strickland, 466 U.S. at 687-91; moreover, counsel's consultation with Petitioner regarding the video cannot be ignored. Based on the evidence presented at the hearing, the state postconviction court reasonably concluded that Petitioner's counsel's decisions did not fall below the standard of professional reasonableness. (Dkt. 16, Ex. 16 at R. 340.) Therefore, Petitioner has failed to satisfy the first prong of the Strickland test.

In addition, significant evidence presented at trial pointed to Petitioner's guilt. The perpetrator of the crime entered the bank, demanded money from a teller, and was given more than $1,000. (Id., Ex. 39 Vol. II at T. 153-58.) Three employees observed him in the bank and leaving the bank, and the surveillance camera caught the crime on video. (Id. at T. 153-57, 185-88, 198-201, 158.) After the perpetrator exited the bank, a bank employee saw him mount a bicycle and go down the street. (Id. at T. 199-200.) The teller had given him a red dye pack with the money, and the dye pack activated. (Id. at T. 157, 201; Vol. III at T.

306.) As he rode, smoke from the dye pack came from his left side. (Id. Vol. III at T. 307.)

A witness driving along the street noticed the smoke and followed the perpetrator in his car.

(Id. at T. 307-08.) The perpetrator pushed his bicycle through bushes and into an apartment

complex, then went up a stairway on the left side, from the witness's perspective, of an

apartment building. (Id. at T. 308-09.) The witness drove down the street to alert a nearby

police officer, who then returned with the witness to the apartment building. (Id. at T. 309-

10.) As they approached, the officer noticed rustling in a storage shed on the right side of the

building. (Id. at T. 310.) The officer went to the shed and found Petitioner inside. (Id.) The

perpetrator had worn a cap, white shirt, black support belt with straps, and navy pants, but

when Petitioner emerged from the shed, he was wearing an orange sweatsuit. (Id. Vol. II at

T. 188, 199; Vol. III at T. 311; Vol. II at T. 167, 190, 203.) However, Petitioner had red dye

stains on his hands and upper left thigh. (Id. Vol. III at T. 311; Vol. II at T. 232, 235-36,

241.) Also, clothing matching the perpetrator's was found on the left-side stairway (id. Vol.

III at T. 312, 336-37); Petitioner's fingerprints were found on the bicycle (id. at T. 390-91);

and a check stub bearing Petitioner's name was found near the clothing (id. at T. 397-99).

Petitioner was taken to the bank, and three bank employees identified him as the perpetrator.

(Id. Vol. II at T. 165-69, 189-91, 201-04.)

Petitioner argues that if still images from the surveillance video had been enhanced,

they would have shown that the perpetrator had no tattoos on his left arm, whereas Petitioner

had tattoos on the inside of his left arm at the time. However, at the evidentiary hearing,

Petitioner displayed his tattoos to the judge from a distance of about four feet. (Id., Ex. 16

at R. 341.) The judge observed that because Petitioner was a dark-skinned African-American and his tattoos were "very dark and subdued," the tattoos would be difficult to see even in enhanced images from the video. (Id.) In addition, Petitioner's trial counsel reviewed a series of unenhanced still images from the video and stated that they were not of sufficient quality to determine whether the perpetrator had a tattoo. (Id., Ex. 14 at R. 251-53.) No evidence presented at the evidentiary hearing showed that the images could be clarified to the degree necessary to conclusively establish whether the perpetrator had tattoos on his left arm. (Id., Ex. 16 at R. 341.)

Due to the strong trail of evidence creating a compelling case against Petitioner at trial, the state postconviction court's observations regarding the lack of contrast between Petitioner's skin and his tattoos, and the lack of evidence regarding whether enhanced images could actually establish whether the perpetrator had tattoos, it seems unlikely that enhanced images would have led to a different result in Petitioner's trial. Hence, Petitioner has failed to meet the second prong of the Strickland test.

Because Petitioner has failed to satisfy the requirements of Strickland, this Court finds that under 28 U.S.C. § 2254(d), the state postconviction court's finding against Petitioner on the issue of ineffective assistance of counsel must stand.

ACCORDINGLY, it is **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 18, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE